CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED
November 18, 2025
LAURA A. AUSTIN, CLERK
BY: /s/ Erica Jones
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ROBERT THOMPSON,<br>    Plaintiff,<br><br>v.<br><br>PATHWARD N.A. CORP.,<br>    Defendant. | Civil Action No. 7:25-cv-00528<br><br>By: Elizabeth K. Dillon<br>    Chief United States District Judge |

## MEMORANDUM OPINION

Pending before the court are two motions: (1) plaintiff Robert Thompson's pro se motion to amend his complaint (Dkt. No. 3), and (2) defendant Pathward N.A.'s ("Pathward") motion to compel arbitration and stay the case (Dkt. No. 4). For the reasons set forth below, Thompson's motion will be denied, and Pathward's motion will be granted.

### I. BACKGROUND

**A. Plaintiff's Factual Allegations**

On August 5, 2025, Thompson filed a complaint alleging various claims against Pathward in connection with the administration of his debit account. (Compl., Dkt. No. 1.) Thompson alleges that he maintained an account with Pathward for over twelve years, through which his Social Security benefits were deposited. In January 2024, Thompson sought to close the account and access funds totaling approximately $18,392.07. He asserts that repeated attempts to close the account and withdraw funds—by mail, phone, and in-person visits, including intervention by a designated power of attorney—were unsuccessful. Thompson further claims that Pathward failed to provide periodic account statements or pay interest on his account funds, and that security questions on the account were changed without his consent.

Thompson contends that these actions caused financial and psychological harm and

resulted in alleged violations of federal banking laws and constitutional rights. His account was eventually closed in December 2024, after he sought intervention from the Office of the Comptroller of the Currency to investigate, and a final check for $18,392.70 was issued, an amount Thompson asserts was incorrect. (*See* Compl.)

Thompson alleges that Pathward and its agents engaged in deliberate misconduct, including wire fraud, misrepresentation, unjust enrichment, and malicious discrimination, in violation of federal banking laws and his constitutional rights. He seeks compensatory damages of $425,000, as well as interest on the $18,392.07 that he claims was unlawfully withheld for twelve months. (*See* Compl.)

**B. Factual Background as to the Motion to Compel Arbitration[1]**

Thompson opened his account with Pathward/Netspend on May 26, 2010. (Dkt. No. 6-1.) As part of the account-opening process, Thompson was required to agree to the terms and conditions of the Cardholder Agreement. (*See* Cardholder Agreement, Dkt. No. 6-2.) In relevant part, it states:

> **18. Arbitration**
>
> A) Purpose: This Arbitration Provision sets forth the circumstances and procedures under which claims (as defined below) may be arbitrated instead of litigated in court.
>
> B) Definitions: As used in this Arbitration Provision, the term "Claim" means any claim, dispute or controversy between you and us arising from or relating to the Card or this Agreement as well as any related or prior agreement that you may have had with us or the relationships resulting from this Agreement, including the validity, enforceability or scope of this Arbitration Provision or the Agreements. "Claim" includes claims of every kind and nature, including but not limited to Initial Claims, Counterclaims, Cross-

---

[1] The information in this section is drawn from a sworn declaration and attached exhibits submitted under penalty of perjury by an employee of Netspend Corporation ("Netspend"), who serves as the Cardholder Litigation Manager. (Carrasco Decl., Dkt. No. 6.) The prepaid debit card issued to Thompson by Pathward was managed by Netspend. (Mem. Supp. Mot. to Compel, Dkt. No. 5.)

2

> Claims and third-party Claims and Claims based upon contract, tort, fraud and other intentional torts, statutes, regulations, common law and equity. The term "Claim" is to be given the broadest possible meaning that will be enforced and includes, by way of example and without limitation, any Claim, dispute or controversy that arises from or relates to (i) your Card, or the Cards of any Additional Cardholders designated by you; (ii) the amount of Available Funds on the Cards; (iii) advertisements, promotions or oral or written statements related to the Cards, goods or services purchased with the Cards; (iv) the benefits and services related to the Cards; and (v) your enrollment for any Card. . . .
>
> G) Arbitration Procedures: This Arbitration Provision is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, 9 U.S.C. Sections 1–16, as it may be amended (the "FAA"). . . .
>
> H) Continuation: This Arbitration Provision shall survive termination of your Card . . . .

(*Id.* at 12–14.)

Thompson's account with Pathward/Netspend was terminated on December 4, 2024. (Dkt. No. 6-1.)

## II.  DISCUSSION

Because Thompson filed his motion to amend before Pathward moved to compel arbitration, and because the proposed amendment could affect the arbitration analysis, the court will address the motion to amend first before turning to the motion to compel arbitration.

**A.  Motion to Amend**

On August 13, 2025, shortly after Thompson filed his initial complaint, he moved to amend the complaint to add a claim for embezzlement under 18 U.S.C. Chapter 31.  (Dkt. No. 3.) However, Chapter 31 is a federal criminal statute, and it does not provide a private right of action.  Therefore, it cannot support a civil claim.  *See Hampton v. Wells Fargo Bank*, No. 8:24-CV-00745-PX, 2025 WL 297849, at *4 (D. Md. Jan. 23, 2025) (dismissing embezzlement claim because there is no private right of action under the federal criminal embezzlement statute), *aff'd*,

No. 25-1140, 2025 WL 1683454 (4th Cir. June 16, 2025). Accordingly, Thompson's motion to amend his complaint to add an embezzlement claim will be denied.

**B. Motion to Compel Arbitration and Stay the Case**

On September 2, 2025, Pathward moved to compel arbitration and stay the case. Thompson has not filed a response to the motion, and the time for doing so has passed. Therefore, the motion is ripe for decision.

The Federal Arbitration Act ("FAA") provides that written agreements to arbitrate disputes "shall be valid, irrevocable, and enforceable[.]" 9 U.S.C. § 2. Congress enacted the FAA to "reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson, Lane Corp.*, 500 U.S. 20, 24 (1991) (internal citations omitted). When parties have an agreement in writing to arbitrate, the FAA requires that district courts stay the action so long as it is "satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement . . . ." 9 U.S.C. § 3. The Supreme Court has confirmed that, "when a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024).

The FAA reflects "a liberal federal policy favoring arbitration agreements" as a means of settling disputes." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 505 (2018) (internal citations omitted). Consistent with this policy, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself [should be] resolved in favor of arbitration." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476 (1989).

To compel arbitration under the FAA, the movant must demonstrate: "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the [matter] . . . to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute." *Meadows v. Cebridge Acquisition, LLC*, 132 F.4th 716, 726 (4th Cir. 2025) (citing *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500–01 (4th Cir. 2002)).

Thompson's failure to respond suggests no apparent dispute as to the validity of the arbitration agreement. However, because pro se filings are to be liberally construed, courts generally afford such litigants some leeway in prosecuting their cases. *See generally Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Accordingly, the court considers the second element of the motion to compel arbitration analysis: whether a valid arbitration agreement exists and whether it encompasses the claims asserted in Thompson's complaint.[2]

As to the first question—whether a valid arbitration agreement exists—Pathward has provided the Cardholder Agreement that Thompson entered into when he opened his debit card account with Pathward/Netspend. That agreement includes an arbitration provision that applies both while Thompson's debit card is active and after he has closed his account. (*See* Cardholder Agreement at 14 ("This Arbitration Provision shall survive termination of your Card. . . .").) Pathward also submitted a signed declaration, under penalty of perjury, from Netspend's Cardholder Litigation Manager, which states in relevant part:

> In order to open this type of account with Pathward and Netspend, to establish a prepaid debit card, and to avail himself of services

---

[2] The first, third, and fourth elements are readily satisfied on the present record. First, a dispute exists, as evidenced by Thompson's filing of this lawsuit. Third, the arbitration provision in the Cardholder Agreement expressly states that the parties' transaction involves interstate commerce. (*See* Cardholder Agreement at 13 ("The Arbitration Provision is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, 9 U.S.C. Sections 1–16, as it may be amended (the "FAA").) Fourth, Thompson's initiation of this action—and his failure to respond to Pathward's motion to compel—reflect his refusal to arbitrate the dispute.

> related to the account, Mr. Thompson was required to enter into the Cardholder Agreement. He was required to accept the terms of the Cardholder Agreement as a condition of activating his debit card, loading any funds on his account, or making any financial transactions.

(Carrasco Decl. ¶ 8.) Thompson has not disputed this evidence. Accordingly, the court finds that a valid arbitration agreement exists between Pathward and Thompson.

As to the second question—whether the arbitration agreement encompasses the claims asserted in Thompson's complaint—the court finds that it does. The arbitration provision contains clear language demonstrating the parties' intent to submit their covered disputes to arbitration. Specifically, it states:

> "Claim" means any claim, dispute or controversy between you and us arising from or relating to the Card or this Agreement . . . . "Claim" includes claims of every kind and nature, including but not limited to . . . Claims based upon contract, tort, fraud and other intentional torts, statutes, regulations, common law and equity. The term "Claim" is to be given the broadest possible meaning . . . .

(Cardholder Agreement at 12.) This provision is sufficiently broad to encompass the claims in Thompson's complaint. While he frames his claims against Pathward as violations of federal banking laws and his constitutional rights, the underlying factual allegations arise from the terms and conditions of his debit card account. (*See* Compl.) Specifically, Thompson takes issue with Pathward's repeated refusal to allow him to close the account or access his funds, the lack of periodic statements and interest payments, and unauthorized changes to his account security settings. Although he characterizes these actions as "fraud, pointed discrimination with malice, unjust enrichment of funds . . . misrepresentation, [and] mali[ci]ous intent to defraud[,]" they essentially reflect disputes over the management of his debit card account. Accordingly, they fall within the broad language of the arbitration provision: "Claims based upon contract, tort, fraud and other intentional torts, statutes, regulations, common law and equity." (Cardholder

6

Agreement at 12.)  Therefore, the court finds that the arbitration agreement encompasses the claims asserted in Thompson's complaint.

Given the liberal federal policy favoring arbitration, the plain language of the arbitration provision, and Thompson's failure to respond to the motion, the court will grant Pathward's motion to compel arbitration.  Moreover, as noted above, "when a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding."  *Spizzirri*, 601 U.S. at 478.  Accordingly, it is appropriate to stay this case pending completion of the arbitration between Thompson and Pathward.

### III.  CONCLUSION

For the reasons stated above, Thompson's motion to amend his complaint (Dkt. No. 3) will be denied, and Pathward's motion to compel arbitration and stay the case (Dkt. No. 4) will be granted.  An appropriate order will issue.

Entered: November 18, 2025.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
Chief United States District Judge